IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRANCE THOMPSON, 355281, )
    Petitioner, )
)
        v. )    2:11-cv-65
)
MICHAEL CURLEY, et al., )
    Respondents. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Terrance Thompson for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Terrance Thompson, an inmate at the Muskegon Correctional Facility in Muskegon, Michigan, has presented a petition for a writ of habeas corpus. Thompson is currently serving a one hundred to two hundred month sentence imposed following his conviction, by a jury, of two counts of aggravated assault at No. CC 200509740 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on May 2, 2006.[1] An appeal was taken to the Superior Court in which the issues presented were:

> I. Whether the trial court committed prejudicial error in permitting the Commonwealth to introduce into evidence over Mr. Thompson's contemporaneous objection, the contents of a letter that he sent from the Allegheny County Jail and was returned to the jail as undeliverable, since the seizure of the letter and reading of its contents was in violation of Mr. Thompson's absolute right to be free of unlawful governmental searches and seizures which is secured by the Fourth Amendment to the United States Constitution and Article One Section Eight of the Pennsylvania Constitution?
>
> II. Whether the sum total of all the evidence adduced at trial, even when looked at in the light most favorable to the Commonwealth as the verdict winner, was

---

[1] See: Petition at ¶¶ 1-6.

1

sufficient as a matter of law to convict Mr. Thompson of two counts of aggravated assault in the shooting of Leland Ham?[2]

On October 10, 2007, the Superior Court affirmed the judgment of sentence. Commonwealth v. Thompson, 934 A.2d 1281 (2007).[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the sole issue presented was:

> I. Whether the Fourth Amendment to the United States Constitution and Article One Section Eight of the Pennsylvania Constitution prohibits police and jail officials from seizing and reading mail without probable cause which was sent by an individual detained in a county jail awaiting trial on criminal charges even though the jail's own policy as communicated to the detained individual indicates that such seizure and reading will not occur in the absence of cause?[4]

On April 9, 2008 leave to appeal was denied.[5]

A timely post-conviction petition was filed on November 3, 2008. That petition was dismissed on September 22, 2009[6] and an appeal to the Superior Court was filed in which the sole issue presented was:

> 1. Did the PCA Court commit an abuse of discretion by denying the defendant's amended PCRA petition without first granting an evidentiary hearing to further develop the record in order to determine if the defendant had any viable claims for relief under the Post Conviction Relief Act?[7]

On October 13, 2010, the denial of post-conviction relief was affirmed.[8]

Leave to appeal to the Pennsylvania Supreme Court was sought in which the issue raised was:

> Did the Superior Court abuse its discretion by affirming the PCRA court's decision that denied the petitioner post-conviction collateral relief without first conducting an evidentiary hearing?[9]

On October 13, 2010, the petition for allowance of appeal was denied.[10]

---

[2] See: Answer at p.60.
[3] See: Answer at pp. 160-165.
[4] See: Answer at p.174.
[5] See: Answer at p. 241.
[6] See: Answer at p.313.
[7] See: Answer at p.341.
[8] See: Answer at pp.393-400.
[9] See: Answer at p.411.
[10] See: Answer at p.452.

The background to this prosecution is set forth in the October 10, 2007 Memorandum of the Superior Court:

> At approximately 4:00 p.m., on May 3, 2004, sixteen-year-old L.H. ("Victim"), while walking on Franklin Avenue in Wilkinsburg en route to a friend's house, observed three unknown black males standing in an alleyway. As Victim proceeded past the men, all of whom were dressed in black, he heard a number of gunshots. Although he attempted to dodge the bullets, he was shot in the side. He made his way to South Avenue, asked someone for help, and then collapsed on the ground. Police and paramedics were summoned to the scene. Victim received treatment and then was transported to the University of Pittsburgh Medical Center, where he underwent surgery for removal of the bullet.
>
> Following a police investigation, Appellant was charged with criminal attempt (homicide) and two (2) counts of aggravated assault in connection with the shooting of Victim. A jury trial was held, at the conclusion of which Appellant was convicted of two (2) counts of aggravated assault.
>
> * * *
>
> [D]uring the course of Appellant's trial, the Commonwealth sought to introduce into evidence the text of a letter written by Appellant while he was incarcerated at the Allegheny County Jail ("ACJ"). The letter, which was addressed to one of the men with Appellant the day of the shooting… was returned to the ACJ, where it was seized by officials. Over an objection by Appellant's counsel, portions of the letter were read into evidence.
>
> In reference to this letter, the Commonwealth presented the testimony of Michael O'Keefe, a detective with the Allegheny County Police, who was assigned to investigations at the ACJ. He testified that, as per the inmate handbook, it is the policy of the ACJ to open, examine, and read the contents of any letter that has been returned to the sender. Detective O'Keefe stated that, on or around June 15, 2005, he was given an envelope by Jim Prokay, who was employed in ACJ mailroom. This envelope was addressed to "D.Cunningham, 1815 Penn Avenue, Number 2, Wilkinsburg, PA   15221" and was stamped "Return to Sender, Cunningham, Darian, moved. Moved. Left no address. Return to sender."
>
> Detective O'Keefe indicated that the envelope contained an affidavit of probable cause concerning the crimes committed against Victim and a two- page written letter. The letter, in pertinent part, read as follows:
>
>> I need you to come and say that Tweed was never with us. He's saying he picked us up after the shit went down. We can't be charged with nothing because they don't have nothing. That's why I'm the only one charged with this shot.

3

> I need your help bad as [f---]. I sent you the paperwork so you can read it yourself. Holler at me and let me know what's good. I go back to court on Thursday, June 9…
>
> Tell mad [motherf-----] to come to the hearing. Hopefully Tweed won't testify if he see niggas. June 7, '05.[11]

The instant petition was executed on January 11, 2011 and in it, Thompson seeks relief on the following grounds:

1. Petitioner's First, Fourth, and Fourteenth Amendment rights were violated when county jail officials seized and read mail, sent by petitioner while awaiting trial, and that improperly seized mail was subsequently utilized as evidence against petition at trial.

2. Trial counsel rendered ineffective assistance of counsel by failing to subpoena alibi witnesses that would have been valuable to the defense of petitioner.[12]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

---

[11] See: Answer at pp. 161-164.
[12] See: Petition at pp. 6a and 8a.

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

The petitioner's second issue, i.e., that counsel was ineffective for failing to call alibi witnesses to testify in his behalf, has never been raised in the appellate courts of the Commonwealth. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has procedurally defaulted invoking the available state court remedies on this issue and no further consideration of this claim is warranted here.

The petitioner's first issue, that is, that the seizure of his returned letter and its introduction into evidence violated his rights under the Federal as well as the Pennsylvania Constitutions was raised in the Pennsylvania appellate courts in Thompson's direct appeal and is properly before this Court for consideration.

While it is clear that upon incarceration an individual does not lose all of his Constitutional protections, in a Fourth Amendment context, the Supreme Court concluded that a prison inmate does not enjoy the prohibition against unreasonable searches and seizures, Hudson v.Palmer, 468 U.S. 517, 526 (1984)("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). Indeed, years earlier, the Court had expressly condoned censorship of prison mail, Procunier v. Martinez, 416 U.S. 396 (1974). In Turner v. Safley, 482 U.S. 78 (1987), the Court acknowledged that even constitutional impingements of protected rights are appropriate when designed to further a legitimate penological interest. As applied to prisoner non-legal mail, it has been concluded that regulations that permit examination of prisoner's mail is permissible in that they serve legitimate penal objectives. Nasir v. Morgan, 350 F.3d 366 (3d Cir.2003). Thus the mail matter seized pursuant to prison regulations and subsequently introduced into evidence were not secured in violation of any constitutionally protected rights.

For this reason, the determination of the state courts[13] that the seizure of the petitioner's non-legal mail was not contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, and this issue does not provide a basis for relief here. Accordingly, it is recommended that the petition of Terrance Thompson for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Any litigant seeking to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Entered: March 21, 2011                                       s/ Robert C. Mitchell
                                                              United States Magistrate Judge

---

[13] See: Answer at pp. 164-165